**DENTAL BENEFIT MANAGEMENT, INC.**

v.

**Rudolph J. CAPRI, Robert Reeves, and Pioneer Business Forms.**

Civ. A. No. 91–6212.

United States District Court, E.D. Pennsylvania.

Aug. 12, 1992.

---

Fred D. Furman, Imogene E. Hughes, Philadelphia, PA, for plaintiff.

William Goldstein, Philadelphia, PA, for Capri.

Jerome Gamburg, Philadelphia, PA, for Pioneer and Reeves.

## MEMORANDUM AND ORDER

DITTER, District Judge.

This case involves RICO and antitrust claims against several defendants, one of whom is in bankruptcy. Plaintiff moves to sever its claims against the bankrupt from its claims against the other defendants so it can proceed to trial against them.

Prior to May 1990, Rudolph J. Capri owned 50 percent of Dental Benefit Management, Inc. (DBMI), a company that administers dental health plans. During this period, Robert Reeves owned Pioneer Busi-

ness forms, a seller and broker of printing services. From 1979 until May, 1990, DBMI purchased various printing services from Pioneer.

In this action, DBMI alleges Capri and Reeves agreed Pioneer would overcharge DBMI for these printing services and that Pioneer and Reeves would pay kickbacks to Capri. DBMI claims this conspiracy violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq,* and the Robinson–Patman Act, 15 U.S.C. § 13(c). The complaint also alleges breach of contract.

After DBMI filed its complaint, Reeves filed a petition for bankruptcy under Chapter 7. DBMI filed a motion in bankruptcy court for relief from the automatic stay, but withdrew its motion after Reeves agreed to cooperate with discovery and to testify at trial. DBMI now seeks to sever the claims against Reeves so that it may proceed against Capri and Pioneer.

Fed.R.Civ.P. 42(b) directs:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

■ The automatic stay of the bankruptcy court protects Reeves, but it does not ordinarily protect non-bankrupt codefendants. As a result, it is appropriate to sever Reeves so long as he is not an indispensable party to this action. *See Cushman and Wakefield, Inc. v. Backos,* 129 B.R. 35, 37 (E.D.Pa.1991).

■ Capri argues Reeves is indispensable. Capri claims Reeves actually perpetrated the fraud, and Capri explains he cannot collect contribution or indemnification under RICO or the antitrust laws. As a result, Capri asserts a trial without Reeves will be unfair because the jury will award the full amount of damages against Capri, and Capri will not be able to reduce his liability to the amount for which he is truly responsible.

Capri's argument fails for several reasons. First, he assumes the jury will be incapable of assessing the appropriate degrees of liability and will simply pile all the damages onto the defendants who are present. Not only do I reject this argument as general speculation, but it does not apply in this case because Capri will not be the only defendant. Pioneer is still in the case.

Second, if indeed Capri violated RICO or the antitrust laws, he is subject to certain penalties, and the jury can decide what those penalties are. Reeves' does not need to be a defendant before the jury can make this decision. It does not make sense that a defendant should gain even temporary immunity from RICO and antitrust penalties because he is fortunate enough to have a co-conspirator in bankruptcy.

Third, Reeves will testify at trial. Therefore, the jury will be able to assess his credibility and in turn the merits of Capri's assertions about their comparative fault. As the plaintiff notes, if Reeves had settled with DBMI, Capri would face the same circumstances, and he certainly would not be able to force Reeves back into the case.

■ Capri also claims the motion to sever is premature. He notes DBMI petitioned the bankruptcy court to lift the automatic stay and then withdrew the motion before a decision. Capri argues I should send the stay issue back to the bankruptcy court before deciding this motion. Although he does not make this clear, I assume he believes the severance issue will be moot if the stay is lifted. There is no reason to send the automatic stay issue back to the bankruptcy court. DBMI is the plaintiff, and it may choose how it wishes to deal with the automatic stay that protects Reeves. If the DBMI and Reeves have made a deal that Capri believes works to his disadvantage, it is not something I can remedy without harming DBMI.

Quite apart from the deficiencies of Capri's arguments, equity, convenience, and economy favor proceeding without Reeves. Discovery is finished and the parties are set for trial. To put everything off will only delay any recovery that DBMI might receive. In addition, during the delay there is the chance that memories will fade and evidence will disappear.

Finally, Capri's dilemma, if such it be, is not one that cries out for judicial relief. According to DBMI, Capri betrayed it by cutting illegal deals with Reeves that extended over many years. One of the penalties Congress has seen fit to impose on those who violate RICO and the antitrust laws is to deny such persons the remedies of contribution and indemnification. There is no reason why the courts should lessen the impact of Congress' policy decision by staying the hand of someone who has been defrauded. If, of course, DBMI cannot prove its allegations of fraud and Capri turns out to be innocent of wrong, he will have nothing to worry about.

For these reasons, a severance is proper. An order follows.

### ORDER

AND NOW, this 12th day of August, 1992, it is hereby ordered that:

1. Plaintiffs motion to sever claims against defendant Robert Reeves is granted.

2. Plaintiff may proceed to trial with its claims against Rudolph J. Capri and Pioneer Business Forms.

3. On October 21, 1992, at 9:30 a.m., a pre-trial conference will be held to discuss settlement, the preparation of pre-trial memos, and final preparations for trial. At this conference, all counsel shall have an authorized representative of their client available in person or by telephone.

4. On or before October 9, 1992, each party shall submit to the other a list of documents that will be offered at trial. Unless an objection to a document is made within ten days, the requirements of Fed. R.Evid. 803(6) will be considered waived.

5. On or before November 13, 1992, the parties will submit to me in chambers individual memos prepared in accordance with Local Rule 21(c). Plaintiff's documents may be numbered 1–99, and defendants 101–199. In addition, counsel may submit proposed voir dire questions, points for charge, and trial briefs.